IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STEVEN HAY PINCUS HUETER, AKA TAO, ET AL.,<br><br>          Plaintiffs,<br><br>   vs.<br><br>AST TELECOMM LLC, ET AL.,<br><br>          Defendants. | Civ. No. 21-00077 JMS-KJM<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS, ECF NO. 31 |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS, ECF NO. 31

## I. INTRODUCTION

Plaintiffs, residents of American Samoa, bring this pro se action alleging that Defendants AST Telecomm d/b/a Bluesky Communications ("AST"), a telecommunications carrier in American Samoa, and several AST employees (collectively, "Defendants"), are in violation of various provisions of the Telecommunications Act of 1996 ("TCA"), as well as various Federal Communications Commission ("FCC") "[l]aws, [r]ules, and [r]egulations."  ECF No. 5 at PageID # 47.  Currently before the court is Defendants' Motion to Dismiss for Lack of Jurisdiction ("Motion to Dismiss"), ECF No. 31.  Defendants argue that Plaintiffs have failed to point to any statutory provision that affords them a

federal private right of action.  The court agrees.  As set forth in more detail to follow, Plaintiffs have failed to state a cognizable federal claim.  Consequently, the court lacks subject matter jurisdiction over the case.  Defendants' Motion to Dismiss is GRANTED.

## II.  **BACKGROUND**

On February 8, 2021, pro se Plaintiffs Steven Jay Pincus Hueter, Faamuli Pete Faamuli, and Michael S. Kirk ("Plaintiffs") filed a Verified Amended Complaint in this action against Defendants.[1]  ECF No. 5.  Plaintiffs are residents of Alega Village, American Samoa.  *Id.* at PageID ## 39-40.  They are also officers of the Alega Preservation Institute, a 501(c)(3) public charity responsible for stewardship of the Alega Marine and Wildlife Sanctuary and Reserve, a private marine reserve in Alega Village.  *Id.*  Plaintiff Faamuli Pete Faamuli is also the Sa'O (Chief) of Alega Village.  *Id.* at PageID # 40.  Defendant AST is an FCC-licensed telecommunications carrier doing business in American Samoa.  *Id.* at PageID ## 40-41; ECF No. 31-1 at PageID # 250.

///

///

---

[1] The Verified Amended Complaint additionally named Rosalia Tisa Faamuli and the Alega Preservation Institute as Plaintiffs, but both were subsequently terminated as parties.  *See* ECF Nos. 25, 26, 81, 86.

In the Verified Amended Complaint, Plaintiffs assert claims under 47 U.S.C. §§ 206 and 207—provisions of the TCA that authorize injured parties to bring private suits against common carriers for substantive violations of other provisions of the Act.  ECF No. 5 at PageID ## 42-43; *see also* 47 U.S.C. §§ 206, 207.  The Complaint does not, however, indicate *which* provisions of the TCA Defendants are allegedly violating.  Instead, the Complaint asserts generally that "Defendant AST Telecomm LLC has violated FCC Laws, Rules, and Regulations to the injury of the Plaintiffs by . . . [i]mproperly hanging and attaching Defendant's telecommunication cables on Plaintiffs' trees, on Plaintiffs' land, and on the official private Alega Marine and Wildlife Sanctuary and Reserve."  ECF No. 5 at PageID ## 47-48.  Plaintiffs claim that they are harmed by "being improperly irradiated by the low-hanging cables by Defendants in violation of FCC laws, rules, and regulations" and by "revenue loss, tree damage, and tree death due to the improper hanging of cables on Plaintiffs' trees in violation of FCC Rules and Regulations that require hanging of cables on poles, or appropriately placed underground."  *Id* at PageID # 48.

On February 9, 2021, Plaintiffs filed a Motion for Temporary Restraining Order and Preliminary Injunction ("Motion for TRO"), ECF No. 9. The court denied the TRO component of the Motion without prejudice, finding that Plaintiffs failed to satisfy the notice requirements of Federal Rule of Civil

Procedure 65.  ECF No. 10.  On February 16, 2021, Plaintiffs filed a "Second"

Motion for Temporary Restraining Order and Preliminary Injunction ("Second

Motion for TRO"), ECF No. 16, along with proof of service on Defendants, ECF

No. 17.  The Second Motion for TRO is substantively identical to the original

Motion for TRO.  And like the Complaint, neither the first nor the Second Motion

for TRO state *which* FCC "laws, rules, and regulations" Defendants are allegedly

violating.

On March 5, 2021, Defendants filed the instant Motion to Dismiss,

along with a memorandum in support of the Motion to Dismiss and in opposition

to Plaintiffs' Second Motion for TRO.  ECF Nos. 31, 31-1.  Essentially,

Defendants argue that Plaintiffs have failed to identify any violation of the TCA

that affords them a private right of action, and thus have failed to establish federal

subject matter jurisdiction.  *See* ECF No. 31-1 at PageID # 259.

Plaintiffs submitted an Opposition to the Motion to Dismiss on March

12, 2021.  ECF No. 32.  In this Opposition, Plaintiffs specify which "FCC laws,

rules, and regulations" Defendants are allegedly violating.  They allege that

Defendants are violating (1) the Pole Attachment Act, 47 U.S.C. § 224, and the

FCC's "One-Touch Make-Ready" order issued pursuant to that Act; (2) FCC

regulations related to antenna height and power requirements, 47 C.F.R. § 90.205,

and FCC regulations related to radiofrequency ("RF") radiation, 47 C.F.R.

§ 1.1307; and (3) standards set forth in the National Electrical Safety Code ("NESC"), the National Electrical Code ("NEC"), and by the National Council on Radiation Protection & Measurements ("NCRP").  *See* ECF No. 32 at PageID ## 279-93.

On March 16, 2021, the court ordered Defendants to submit a Reply addressing whether the TCA contains a private right of action for violations of the provisions identified by Plaintiffs.  ECF No. 35.  Defendants submitted their Reply on March 26, 2021, ECF No. 37, and Plaintiffs submitted an Opposition to that Reply on March 30, 2021, ECF No. 40.  In this Opposition, Plaintiffs assert that an additional private right of action under 47 U.S.C. § 332(c)(7)(B)(iv)-(v).  ECF No. 40 at PageID ## 925-28.

After careful review of the statutory provisions and regulations at issue, the court invited the FCC to participate in the case as amicus curiae, recognizing that because the FCC is "'uniquely qualified'" to interpret the TCA's statutory and regulatory framework, "'the agency's own views should make a difference.'"  ECF No. 44 at PageID ## 1400-01 (quoting *Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 883 (2000)).  Specifically, the court invited the FCC to address the following questions:

(1)  Does the TCA provide a private cause of action for violations of

FCC regulations regarding RF emissions, 47 C.F.R. §§ 27.52,

1.1307, 1.1310?[2]

(2)  Does the TCA provide a private cause of action for violations of

FCC regulations regarding antenna height and power requirements,

47 C.F.R. § 90.025 (and provisions referenced therein)?

*Id.* at PageID # 1401.

The court asked the FCC to respond to the invitation by April 27, 2021, but provided that the FCC could ask for an extension if needed.  *Id.*  The FCC did request, and was granted, extensions until July 15, 2021.  *See* ECF Nos. 54, 55, 77, & 78.

Meanwhile, on May 19, 2021, Plaintiffs filed a Motion for Temporary Restraining Order and Preliminary Injunction pertaining to several allegedly low-hanging wires in Alega Village, ECF No. 56 ("May 19 Motion for TRO").  The court held a status conference on May 21, 2021.  ECF No. 62.  At the conference, the court raised concerns about the basis for federal jurisdiction and directed Plaintiffs to file a new motion addressing these jurisdictional issues.  *See* ECF No. 70.

---

[2] Plaintiffs only allege violations of 47 CFR § 1.1307.  But in the court's review, it became evident that §§ 1.1310 and 27.52 are directly linked to § 1.1307.  Thus, to be comprehensive, the court invited the FCC to opine on these two provisions as well.

On May 30, 2021, Plaintiffs filed a Second Motion for Temporary Restraining Order and Preliminary Injunction ("May 30 Motion for TRO"), ECF No. 63, which superseded the May 19 Motion for TRO. *See* ECF No. 70. Rather than clarifying the issues before the court, the May 30 Motion broadened them, asserting that the court should exercise supplemental jurisdiction over unspecified violations of American Samoa law and "common sense." ECF No. 63 at PageID # 2556. In addition, the Motion requests that the American Samoa Power Authority be joined as a necessary party, and that sanctions issue against all Defendants. *Id.* at PageID # 2558. Defendants submitted an Opposition to the May 30 Motion for TRO on June 11, 2021, ECF No. 74, and Plaintiffs submitted a Reply on June 12, 2021, ECF No. 75.

On July 15, 2021, the FCC submitted a Statement of Interest setting forth its view that none of the authorities Plaintiffs rely upon affords them a private right of action. ECF No. 84. The court ordered the parties to submit responses to the FCC's Statement of Interest, addressing, among other things, the level of deference the court should afford the FCC's views. ECF No. 85. Plaintiffs submitted their Response on July 17, 2021, ECF No. 87, and Defendants submitted their Response on July 30, 2021, ECF No. 88.

Thus, currently before the court are (1) Plaintiffs' February 16, 2021 Motion for TRO, ECF No. 16;[3] (2) Plaintiffs' May 30, 2021 Motion for TRO, ECF No. 63, and (3) Defendants' Motion to Dismiss, ECF No. 31.  These Motions are decided without a hearing pursuant to Local Rule 7.1(c).

## III.  STANDARDS OF REVIEW

**A.     Motion to Dismiss for Lack of Subject Matter Jurisdiction**

A federal court's subject matter jurisdiction may be challenged by motion pursuant to Federal Rule of Civil Procedure 12(b)(1).  "[The] party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996) (per curiam).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Here, Defendants raise a facial attack—they "assert[] that the [complaint's] allegations . . . are insufficient on their face to invoke federal jurisdiction." *Id.*  The court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient to

---

[3] Because Plaintiffs' February 9, 2021 Motion for TRO, ECF No. 9, and Plaintiffs' February 16, 2021 Motion for TRO, ECF No. 16, are substantively identical, the court construes them as the same Motion.

invoke the court's jurisdiction. *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013). The court will dismiss a party's claim for lack of subject matter jurisdiction "only when the claim is so insubstantial, implausible, foreclosed by prior decisions of th[e Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citation and quotation marks omitted); *see* Fed. R. Civ. P. 12(b)(1).

**B.    Pro Se Plaintiffs**

Because Plaintiffs are proceeding pro se, the court liberally construes their Complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987). The court also recognizes that "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Crowley v. Bannister*, 734 F.3d 967, 977-78 (9th Cir. 2013). A court may, however, deny leave to amend where further amendment would be futile. *See, e.g.*, *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (reiterating that a district court may deny leave to amend for, among other reasons, "repeated failure to cure deficiencies by amendments previously allowed . . . [and] futility of amendment").

9

## C.    Agency Deference

Where "Congress has delegated to [an agency] authority to implement [a] statute; the subject matter is technical; and the relevant history and background are complex and extensive," courts faced with interpreting the statute should consider the agency's views.  *Grier*, 529 U.S. at 883; *see also Mead Corp. v. Tilley*, 490 U.S. 714, 726 (1989) (explaining that for a court to interpret a statute or its implementing regulations "without the views of the agenc[y] responsible for enforcing [the statute], would be to 'embark upon a voyage without a compass'" (quoting *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 568 (1980))).  This is especially true where the "the interpretive issue arises in the context of a 'complex and highly technical regulatory program.'"  *Kisor v. Wilkie*, 139 S. Ct. 2400, 2413-14 (2019) (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)).

The TCA's statutory and regulatory scheme is such a "complex and highly technical program," *see, e.g.*, *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172-73 (9th Cir. 2002), and "the FCC is the agency that is primarily responsible for the interpretation and implementation of the Telecommunications Act and of its own regulations," *North Cnty. Commc'ns Corp. v. Cal. Catalog & Tech.*, 594 F.3d 1149, 1155 (9th Cir. 2010) (quoting *Greene v. Sprint Commc'ns Co.*, 340 F.3d 1047, 1052 (9th Cir. 2003)).  Thus, in determining whether a plaintiff can assert a private right of action under the TCA

or its implementing regulations, the court's "analysis is intertwined with the requisite deference to the [FCC's] interpretation." *Id.* at 1155. Accordingly, the court grants significant weight to the FCC's Statement of Interest in this case.

## IV. <u>ANALYSIS</u>

Plaintiffs argue that they may assert federal private rights of action under 47 U.S.C. §§ 206 and 207 for violations of (1) the Pole Attachment Act; (2) FCC regulations; and (3) standards set forth in the NEC, NESC, and by the NCRP. In addition, Plaintiffs argue that they have an "independent" private right of action under 47 U.S.C. § 332(c)(7)(B)(iv)-(v).[4] The court first sets forth the standard for finding a private right of action to enforce federal law before considering each argument in turn. Ultimately, the court concludes that Plaintiffs have failed to assert a cognizable cause of action under the TCA.[5]

---

[4] In their operative Complaint, ECF No. 5, Plaintiffs merely assert a private right of action pursuant to 47 U.S.C. §§ 206 and 207, without specifying the underlying substantive violations. The Complaint also makes no reference to 47 U.S.C. § 332. In fact, Plaintiffs first articulate the specific "laws, rules, and regulations" that Defendants are allegedly violating in their briefing on the Motion to Dismiss. *See* ECF Nos. 32 & 40. The Complaint does, however, address the *substance* of Plaintiffs claims, despite its failure to specify the precise rules that Defendants are allegedly violating. The court thus liberally construes several of Plaintiffs' filings in an effort to understand their legal theories. *See Alvarez v. Hill*, 518 F.3d 1152, 1158 (9th Cir. 2008) (holding that pro se pleadings were sufficient where "[a]s contemplated by the regime of liberal notice pleading, [the plaintiff's] subsequent filings refined the factual allegations and legal theories supporting his . . . claims" (citing *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989) ("Responsive pleadings . . . may be necessary for a pro se plaintiff to clarify his legal theories.")))

[5] In the May 30 Motion for TRO—the most recent such motion—Plaintiffs also assert that the court should exercise supplemental jurisdiction "over the common sense and State or

(continued . . . )

## A.      Standard for Private Rights of Action to Enforce Federal Law

A private right of action "to enforce federal law must be created by Congress"; that is, through statutory text.  *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001); *see also Greene*, 340 F.3d at 1050 ("It is axiomatic that private rights of action must be created by Congress.").  A statutory private right of action may be either express or implied.  *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 15 (1979).  An express private right of action exists where a statute specifies that a private litigant may bring a lawsuit to vindicate the rights described in a statute.  *See, e.g.*, *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1230 (9th Cir. 2008).

"Where a federal statute does not explicitly create a private right of action, a plaintiff can maintain a suit only if Congress intended to provide the plaintiff with an implied private right of action."  *Id.* (citation, brackets, and quotation marks omitted).  And an implied private right of action may only be inferred if the statute displays Congress' intent "to create not just a private right but also a private remedy."  *Sandoval*, 532 U.S. at 286; *see also North Cnty.*, 594

---

Territorial public safety law relating to the hazards challenged by Plaintiffs in Alega and island-wide, pursuant to 28 U.S.C. § 1367."  ECF No. 63 at PageID # 2556.  Setting aside the fact that Plaintiffs have not alleged any recognizable state or territorial claims, supplemental jurisdiction is only proper where at least one claim is within the original jurisdiction of the court.  *See* 28 U.S.C. § 1367.  Here, because plaintiffs have not asserted any federal cause of action, the court cannot retain jurisdiction over the case at all, let alone elect to exercise supplemental jurisdiction over any purported state or territorial law claims.

F.3d at 1155 ("[I]t is not enough for [the plaintiff] to broadly proclaim that it is entitled to compensation under the [TCA].  Instead, [plaintiffs] must demonstrate that a federal *statute* vests [them] with such a right." (citation and quotation marks omitted)).  Absent specific Congressional intent to this effect, no private right of action exists.  *See Sandoval*, 532 U.S. at 286-87 ("[C]ourts may not create [a private right of action], no matter how desirable that might be as a policy matter, or how compatible [it may be] with the statute.").

Courts discern whether a statute reflects Congressional intent to create a private right of action by relying on ordinary principles of statutory interpretation.  *Id.* at 288.  That is, courts begin their inquiry by looking to the text and structure of the statute.  *Id.* (explaining that courts can "begin (and . . . can end) [their] search for Congress's intent with the text and structure of" the statute).  When the text and structure of the statute are not dispositive, courts may also consider legislative history and other legal context as appropriate.  *Id.*; *see also Northstar Fin. Advisors, Inc. v. Schwab Inv.*, 615 F.3d 1106, 1115 (9th Cir. 2010).

"[R]ight- or duty-creating language of the statute has generally been the most accurate indicator of the propriety of implication of a private cause of action."  *Cannon v. Univ. of Chi.*, 441 U.S. 677, 690 n.13 (1979) (cited with approval in *Sandoval*, 532 U.S. at 288).  By contrast, "[s]tatutes that focus on the person regulated rather than the individuals protected create 'no implication of an

intent to confer rights on a particular class of persons.'" *Sandoval*, 532 U.S. at 289 (quoting *California v. Sierra Club*, 451 U.S. 287, 294 (1981)).  Likewise, if other analogous provisions of the statute "expressly provid[e] for private causes of action," the absence of such express language in a specific provision implies "congressional intent not to create an implied cause of action." *Northstar*, 615 F.3d at 1115 (internal quotations and modifications omitted).  And if "Congress designated a method of enforcement other than through private lawsuits," the implication is that "'Congress intended to preclude'" a private right of action. *Id.* (quoting *Sandoval*, 532 U.S. at 290).

Where a statute creates a private right of action, litigants may vindicate that right for violations of federal regulations that "authoritatively construe the statute itself." *Sandoval*, 532 U.S. at 284 (explaining that it is "meaningless to talk about a separate cause of action to enforce the regulations apart from the statute.  A Congress that intends the statute to be enforced through a private cause of action intends the authoritative interpretation of the statute to be so enforced as well").  But while "[l]anguage in a regulation may invoke a private right of action that Congress through statutory text created . . . it may not create a right that Congress has not." *Id.* at 291 ("[W]hen a statute has provided a general authorization for private enforcement of regulations, it may perhaps be correct that the intent displayed in each regulation can determine whether or not it is privately

14

enforceable.  But it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself.").

Finally, when interpreting the TCA, courts "presume[] that no private rights of action are intended."  *Greene*, 340 F.3d at 1053; *see also North Cnty.*, 594 F.3d at 1155 (explaining that "[a] broad assertion of a private right of action is not easily maintained" under the TCA).  This is because Congress created the FCC to uniformly administer the TCA, and "[t]o imply a private right of action runs counter to this centralization of function and to the development of a coherent national communications policy."  *Greene*, 340 F.3d at 1053.

## B.     Private Right of Action Under 47 U.S.C. §§ 206 & 207

Plaintiffs claim that they may assert private rights of action under §§ 206 and 207 of the TCA for Defendants' alleged violations of FCC "Laws, Rules, and Regulations."  ECF No. 5 at PageID ## 42-43.  Section 206 provides:

> In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter.

And § 207 provides:

> Any person claiming to be damaged by any common
> carrier subject to the provisions of this chapter may either
> make complaint to the Commission as hereinafter
> provided for, or may bring suit for the recovery of the
> damages for which such common carrier may be liable
> under the provisions of this chapter, in any district court
> of the United States of competent jurisdiction; but such
> person shall not have the right to pursue both such
> remedies.

"The plain language of §§ 206 and 207 establishes procedures for private parties to pursue claims in federal court, but does not establish an independent private right of action for compensation." *North Cnty.*, 594 F.3d at 1160. Instead, "there must be an independent right to compensation for a private right of action to lie under §§ 206 and 207." *Id.*

Plaintiffs assert that they are entitled to an independent right to compensation pursuant to (1) the Pole Attachment Act, 47 U.S.C. § 224; (2) FCC RF emissions regulations, 47 C.F.R. § 1.1307, and FCC antenna power and height regulations, 47 C.F.R. § 90.205; and (3) standards contained in the NEC, NESC, and NCRP.[6]

---

[6] Plaintiffs also assert that they "have independent right to compensation for a private right of action to lie under §§ 206 and 207 by what may be considered as Common Law of Torts claims or even 'Federal' Common Law of Tort." ECF No. 32 at PageID # 290. But this argument is patently without merit. "There is no federal general common law. Congress has no power to declare substantive rules of common law applicable in a state whether they be local in their nature or 'general,' be they commercial law or a part of the law of torts. And no clause in the Constitution purports to confer such a power upon the federal courts." *Erie R. Co. v.*
(continued . . . )

### 1.   *Pole Attachment Act, 47 U.S.C. § 224*

Plaintiffs first argue that the TCA affords them a right to compensation through the statutory provision known as the "Pole Attachment Act," 47 U.S.C. § 224, as well as the so-called One-Touch Make-Ready Order promulgated by the FCC pursuant to that Act.  *See* Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Inv., 33 FCC Rcd. 7705, 7705–92 (2018) [hereinafter "One-Touch Make-Ready Order"]. Specifically, Plaintiffs contend that the Pole Attachment Act affords them a right to compensation for harm caused by Defendants' improper attachment of cables to Plaintiffs' trees and failure to replace defunct poles.  *See, e.g.*, ECF No. 32 at PageID ## 276-77.  But the Pole Attachment Act does address the type of conduct that Plaintiffs allege, nor does it contain a private right of action.

The Pole Attachment Act "was enacted by Congress as a solution to a perceived danger of anticompetitive practices by utilities in connection with cable television service."  *F.C.C. v. Florida Power Corp.*, 480 U.S. 245, 247 (1987).  In particular, the Act was meant to address the practice of utilities overcharging cable operators for attaching their cables to utility-owned poles.  *Id.*  To that end, the Act sets forth the authority of the FCC to "regulate the rates, terms, and conditions for

---

*Tompkins*, 304 U.S. 64, 78 (1938).  And, in any case, §§ 206 and 207 only authorize private rights of action for violations of the TCA—not violations of common law.

pole attachments to provide that such rates, terms, and conditions are just and reasonable."[7]  47 U.S.C. § 224(b)(1).  It also creates an administrative process for telecommunications carriers to seek relief before the FCC for alleged overcharging.  *Id*.  And the Act imposes a number of conditions to ensure that the costs of modifying and replacing pole attachments are distributed fairly between utilities and the various telecommunications carriers who may share space on the utilities' poles.  *Id.* § 224(h),(i).

    The Act does *not* address—let alone prohibit—the conduct Plaintiffs allege.  It does not address the technical requirements for physically attaching cables to poles, altering such attachments, or replacing defunct poles.  Put differently, the Act does not protect the rights Plaintiffs seek to vindicate.  To the contrary, it protects the rights of telecommunications carriers to be free from overcharging and discriminatory practices at the hands of utilities and other pole owners.

    Moreover, the Act does not contain a private right of action.  There is no express private right of action specified, and the Act does not reflect an intent to

---

[7] "[A] rate is just and reasonable if it assures a utility the recovery of not less than the additional costs of providing pole attachments, nor more than an amount determined by multiplying the percentage of the total usable space, or the percentage of the total duct or conduit capacity, which is occupied by the pole attachment by the sum of the operating expenses and actual capital costs of the utility attributable to the entire pole, duct, conduit, or right-of-way." 47 U.S.C. § 224(d)(1).  These terms have no bearing on how cables are physically attached.

create a private remedy.  Instead, the Act establishes an administrative process to protect the rights of telecommunications carriers.  It mandates that the FCC establish "procedures necessary and appropriate to hear and resolve complaints concerning such rates, terms, and conditions," and continues, "[f]or purposes of enforcing any determinations resulting from complaint procedures established pursuant to this subsection, the Commission shall take such action as it deems appropriate and necessary."  *Id*. § 224(b)(1).  Through this provision, Congress designated "a method of enforcement other than through private lawsuits," plainly indicating that "Congress intended to preclude" a private right of action. *Northstar*, 615 F.3d at 1115.  In short, the statute does not govern the conduct Plaintiffs allege, and, in any event, does not permit a private right of action for the conduct it *does* govern.

Plaintiffs also argue that the FCC's One-Touch Make-Ready Order, which was promulgated pursuant to the Pole Attachment Act in 2018, provides them with a private right of action.  They argue that replacing poles constitute "complex make-ready work" under the One-Touch Make-Ready Order and that Defendants are in violation of that Order by "failing to implement required complex make ready work of replacing defunct poles in Alega," including by failing to "arrange with [the utility] for pole replacement."  ECF No. 32 at PageID ## 279-80, 283.  Citing the One-Touch Make-Ready Order, Plaintiffs additionally

argue that Defendants' "cables and equipment . . . are not in[] compliance with safety and pole owner construction standards." *Id.* at PageID # 280.

These arguments fail.  First, because the Pole Attachment Act itself does not create a private right of action, the One-Touch Make-Ready Order issued pursuant to that Act cannot independently create one.  *See Sandoval*, 532 U.S. at 291 ("[l]anguage in a regulation . . . may not create a right that Congress has not").  Further, even assuming that the One-Touch Make-Ready Order *could* support a private cause of action, it would not assist Plaintiffs.  Like the Pole Attachment Act, the Order simply does not address the type of conduct they allege.

The FCC issued the One-Touch Make-Ready Order to facilitate rapid expansion of broadband technology.  Indeed,

> [i]n adopting the One-Touch Make-Ready Order, the FCC intended to make it faster and cheaper for broadband providers to attach to already-existing utility poles.  Previously, only the pole owners could perform the preparatory work necessary for attachment.  The main purpose of the Order is to create a new process, called one-touch make-ready, that allows new attachers themselves to do all the preparations.

*City of Portland v. United States*, 969 F.3d 1020, 1049-50 (9th Cir. 2020) (internal citation omitted).  Although the One-Touch Make-Ready Order enables telecommunications carriers to perform the "complex make-ready work" of preparing to attach their infrastructure to poles, it does not require them to do so.  Nor does it require them to replace defunct poles.  Further, the One-Touch Make-

Ready Order does not impose safety standards, construction requirements, or any other rules for *how* those attachments should be physically made.[8]  Plaintiffs have no private right of action under the Pole Attachment Act or the FCC's One-Touch Make-Ready Order.

### 2.  *FCC Regulations*

Plaintiffs argue that they have a private right of action for Defendants' alleged violations of two FCC regulations: 47 C.F.R. § 1.1307, which concerns radiofrequency emissions;[9] and 47 C.F.R. § 90.205, which concerns antenna height

---

[8] The Order does not impose "safety and pole owner construction standards" as Plaintiffs allege, but it does obliquely mention them.  Specifically, the Order prohibits utilities from requiring new attachers to bear "the costs associated with bringing poles or third-party equipment into compliance with current safety and pole owner construction standards to the extent such poles or third-party equipment were out of compliance prior to the new attachment."  One-Touch Make-Ready Order ¶ 121, 33 FCC Rcd. at 7766.  The Order also prohibits utilities from "deny[ing] new attachers access to the pole solely based on safety concerns arising from a pre-existing violation" or from "delay[ing] completion of make-ready while the utility attempts to identify or collect from the party who should pay for the correction of the pre-existing violation."  One-Touch Make-Ready Order ¶ 122, *id.* at 7767.  The Order thus suggests that the utility—in this case the American Samoa Power Authority—has the authority to impose substantive safety standards for pole construction, replacement, and attachment.  While Plaintiffs might be able to seek redress under such standards before the utility or pursuant to applicable local or territorial law, violations of such standards do not give rise to a federal cause of action.

[9] As explained by the FCC, under 47 C.F.R. § 1.1307(b)(1)(i), "a licensee must evaluate the human exposure level from the RF source" and "[i]f the human exposure level exceeds limits set forth in 47 C.F.R. § 1.1310, the licensee must prepare an environmental assessment, *id.* § 1.1307(b)(1)(i)(C), and take certain mitigation measures (such as signage and fencing) so that access to high-exposure areas is restricted to trained personnel exercising appropriate precautions, *id.* § 1.1307(b)(1)(ii) & (b)(4)."  ECF No. 84-1 at PageID # 3295 n.1.

and power requirements.[10]   Plaintiffs do not, however, point to any statutory

provisions that these regulations implement, let alone that create a private right of

action.[11]

      Plaintiffs appear to argue that Section 1 of the Communications Act,

47 U.S.C. § 151, creates a private right of action for violation of these regulations.

Section 151 provides that the FCC was created, in part, to "promot[e] safety of life

and property through the use of wire and radio communications."[12]   From this,

Plaintiffs argue that they are entitled to a private right of action because violations

---

[10] As described by the FCC, "these regulations prescribe limits on the maximum power level of an antenna, generally based on its frequency and height above adjacent terrain."  ECF No. 84-1 at PageID # 3295 n.2.

[11] Plaintiffs also intermittently cite to 47 C.F.R. §§ 1.1402 and 1.1411, which provide definitions of various terms, including "utility," "pole attachment," "new attacher," "existing attacher," and "make-ready."  *See, e.g.*, ECF No. 32-4.  While such definitions provide useful context, they do not provide a basis for Plaintiffs' federal claims.

[12] In full, 47 U.S.C. § 151 provides:

> For the purpose of regulating interstate and foreign commerce in communication by wire and radio so as to make available, so far as possible, to all the people of the United States, without discrimination on the basis of race, color, religion, national origin, or sex, a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges, for the purpose of the national defense, for the purpose of promoting safety of life and property through the use of wire and radio communications, and for the purpose of securing a more effective execution of this policy by centralizing authority heretofore granted by law to several agencies and by granting additional authority with respect to interstate and foreign commerce in wire and radio communication, there is created a commission to be known as the "Federal Communications Commission", which shall be constituted as hereinafter provided, and which shall execute and enforce the provisions of this chapter.

of FCC RF radiation and antenna height and power requirements "fail to promote safety of life and property."  *See* ECF No. 32 at PageID ## 288-91.  But, as the FCC points out, "Section 1 is a statement of congressional purposes that does not impose affirmative obligations, much less create a clearly expressed right of action for private parties to seek judicial enforcement of any alleged violation."  ECF No. 84-1 at PageID # 3297 n.5 (internal citation omitted).  The court agrees.  Section 151 creates the FCC and sets forth the agency's public mandate as well as its authority to "execute and enforce the provisions of this chapter."  47 U.S.C. § 151. Such statutory provisions, that focus on "the agencies that will do the regulating" rather than on the individuals protected, or even the person regulated, create "no implication of an intent to confer rights on a particular class of persons." *Sandoval*, 532 U.S. at 289.  There is no implied private right of action in § 151.

Similarly, Plaintiffs appear to argue that they have a private right of action under 47 U.S.C. § 332(a).  *See, e.g.*, ECF No. 32 at PageID ## 288-89. Section 332(a)(1) provides that "[i]n taking actions to manage the spectrum to be made available for use by the private mobile services, *the Commission* shall consider, consistent with section 151 of this title, whether such actions will . . . promote the safety of life and property."  47 U.S.C. § 332(a)(1) (emphasis added). Again, from this, Plaintiffs assert they have a private right of action because their myriad alleged violations of FCC regulations, as well as the NEC, NESC, and

NCRP standards demonstrate that "Defendants' telecommunications infrastructure are not adequate facilities, and fail to promote safety of life and property." ECF No. 32 at PageID ## 288-89. But, like § 151, § 332(a) "focuses neither on the individuals protected nor even on the [entities] being regulated, but on the agenc[y] that will do the regulating." *Sandoval*, 532 U.S. at 289. And such statutes, "'phrased as a directive to federal agencies' . . . reveal[] no congressional intent to create a private right of action." *Id.* (quoting *Cannon*, 441 U.S. at 690-91).

Next, although Plaintiffs do not point directly to it, their assertion of rights under §§ 206 and 207 could be liberally construed as asserting a cause of action under 47 U.S.C. § 201(b). This is because the procedure to pursue a private cause of action in §§ 206 and 207 is "linked" to § 201(b), which declares as "unlawful" any "charge, practice, classification or regulation that is unjust or unreasonable." *Global Crossing Telecomms., Inc. v. Metrophones Telecomms., Inc.*, 550 U.S. 45, 53 (2007). Under the TCA, the FCC, "not a court," is to decide whether or not conduct is "unjust or unreasonable." *Id.* at 49. And the FCC has "long implemented § 201(b) through the issuance of rules and regulations." *Id.* at 53. Accordingly, "[i]nsofar as the statute's language is concerned, to violate a regulation that lawfully implements § 201(b)'s requirements *is* to violate the statute." *Id.* at 54. Thus, Plaintiffs could arguably be asserting that they have a private right of action under § 201(b) because the FCC has declared RF emissions

that exceed limits proscribed in § 1.1307 to be unjust or unreasonable; and, likewise, that it is unjust or unreasonable for facilities to exceed the height and power requirements in § 90.205.

But, to the extent Plaintiffs are making this argument, it is unavailing. There can be no question that the regulations relied upon do not implement § 201(b). First, the Supreme Court has explained that, in the ordinary case, the FCC implements § 201(b) with respect to "rate setting and rate divisions," and that the private cause of action under §§ 201(b), 206, and 207 is not to be construed as a "back-door remedy for violation of [other] FCC regulations" more generally. *Id.* at 60. Neither § 1.1307 nor § 90.205 relate to rate setting or rate divisions, making it unlikely they fall under the ambit of § 201(b).

Second, in order for a regulation to give rise to a private right of action under § 201(b), that regulation must constitute an "authoritative interpretation" of the statute. *Id.* at 62. That is, the regulation or a related FCC determination must affirmatively state that violating the regulation is unlawful for the purpose of § 201(b). *Compare id.* at 56 (finding violation of regulation gave rise to a § 201(b) private right of action where the FCC issued an order stating that failure to comply with that regulation constitutes an "unreasonable practice" under § 201(b)) *with North Cnty.*, 594 F.3d at 1158 (finding no private right of action

where "the Commission has not made any findings that [violation of the regulation at issue] constitutes an unreasonable practice in violation of § 201(b)").[13]

Here, Plaintiffs have pointed to no FCC determination that violation of either 47 C.F.R. § 1.1307 or 47 C.F.R. § 90.205 constitutes an unlawful practice under §§ 201(b).[14]  Absent such a determination, there can be no private cause of action under §§ 201(b), 206, and 207.  *North Cnty.*, 594 F.3d at 1158 (explaining that an affirmative FCC determination is "integral to claims involving § 201(b)").

Plaintiffs do not point to any statutory private right of action that is implemented via either the RF regulations or the antenna power and height regulations, nor has the court been able to identify any such provision.  Plaintiffs do not have a private right of action for alleged violations of 47 C.F.R. § 1.1307 or 47 C.F.R. § 90.205.

3.      ***National Electrical Code, National Electrical Safety Code, and National Council on Radiation Protection & Measurements***

Plaintiffs next allege that Defendants have failed to maintain their telecommunications infrastructure "to the NEC and NESC standards."  ECF No. 32

---

[13] The FCC's determination that conduct is unlawful under § 201(b) must also be reasonable.  *Global Crossing*, 550 U.S. at 60 ("The FCC properly implements § 201(b) when it reasonably finds that the failure to follow a Commission, *e.g.*, rate or rate division determination made under a *different* statutory provision is unjust or unreasonable under § 201(b)").

[14] To the contrary, in the course of this litigation the FCC has expressed its view that neither provision is amenable to private enforcement.  *See generally* ECF No. 84-1.

at PageID # 279.  But neither the NEC nor the NESC are enforceable through the TCA; in fact, they are not enforceable at all.  The NEC is a non-binding standard "for safe electrical design, installation, and inspection" published by the National Fire Protection Association.  *See* https://www.nfpa.org/codes-and-standards/all-codes-and-standards/list-of-codes-and-standards/detail?code=70 (last visited Aug. 31, 2021).  The National Fire Protection Association is a private trade association. *See* https://www.nfpa.org/About-NFPA/NFPA-overview/NFPA-operations/Articles-of-organization (last visited Aug. 31, 2021).  Its publications do not carry the force of law.  Likewise, the NESC specifies "the ground rules and guidelines for practical safeguarding of utility workers and the public during the installation, operation, and maintenance of electric supply, communication lines and associated equipment."  https://standards.ieee.org/products-services/nesc/index.html (last accessed Aug. 31, 2021).  It is published by the Institute of Electrical and Electronics Engineers, a professional association for electronic and electrical engineering.  *See* https://standards.ieee.org/about/index.html (last visited Aug. 31, 2021).  This document, too, lacks the force of law.[15]

---

[15] Plaintiffs state that "FCC requirements incorporate reference to the National Electrical Code and the National Electrical Safety Code," ECF No. 32 at PageID # 279, but do not point to any federal statutes, rules, or regulations that incorporate or otherwise refer to the NESC or NEC, nor has the court been able to identify any such provisions.  NESC and NEC standards are not FCC requirements.

(continued . . . )

Finally, Plaintiffs allege that Defendants have violated "Maximum Permitted Exposure (MPE) limits of the National Council on Radiation Protection (NCRP)."  ECF No. 32 at PageID # 269.  But again, these standards are not legally binding—NPRC merely disseminates "information and recommendations" for radiation exposure limits.  *See* https://ncrponline.org/about/ (last visited Aug. 31, 2021).  Violation of those recommended limits cannot give rise to a private cause of action.

In short, non-binding standards produced by private entities provide no basis for a federal right of action under the TCA or otherwise.  Plaintiffs' arguments with respect to the NEC, NESC, and NPRC fail.

## C.    Private Cause of Action Under 47 U.S.C. § 332(c)(7)(B)(iv)-(v)

Plaintiffs assert that they are independently entitled to a private right of action and are authorized to sue under 47 U.S.C. §§ 332(c)(7)(B)(iv)-(v). Section 332(c)(7)(B)(iv) provides:

> No State or local government or instrumentality thereof
> may regulate the placement, construction, and
> modification of personal wireless service facilities on the
> basis of the environmental effects of radio frequency
> emissions to the extent that such facilities comply with

---

It is true that some states, territories, and municipalities have incorporated the standards set forth in the NEC and/or NESC into their statutory law.  *See, e.g.*, Ark. Stat. § 11-5-303; Mont. Stat. § 69-4-201; S.D. Stat. § 31-26-5; Ky. Stat. § 278.042; Me. Stat. tit. 32 § 1153-A.  But these standards have not been incorporated into federal law and are of no relevance to Plaintiffs' efforts to assert a private cause of action under the TCA.

> the Commission's regulations concerning such
> emissions.

And § 332(c)(7)(B)(v) provides:

> Any person adversely affected by any final action or
> failure to act by a State or local government or any
> instrumentality thereof that is inconsistent with this
> subparagraph may, within 30 days after such action or
> failure to act, commence an action in any court of
> competent jurisdiction.

From these provisions, Plaintiffs conclude that if, as alleged,

Defendants' facilities do not comply with FCC regulations regarding RF

emissions, then Plaintiffs (as persons adversely affected) have a right to commence

an action directly against AST Telecomm.  *See* ECF No. 40 at PageID # 924.

Plaintiffs misunderstand the statute.

The purpose of § 332(c)(7) is to "preserve[] local zoning authority

while recognizing some specific limitations on traditional authority to regulate

wireless facilities" in order to facilitate the "'provision of personal wireless

services.'"  *City of Portland*, 969 F.3d at 1033-34 (quoting 47 U.S.C.

§ 332(c)(7)(B)(i)(II)).  To that end, the statute expressly creates a private right of

action for harms caused by "any final action or failure to act by a State or local

government"—typically state or local attempts to impose higher standards on

telecommunications carriers than those imposed by the FCC.[16]  47 U.S.C. § 332(c)(7)(B)(v).  In contrast, the statute does not impose a duty upon telecommunications carriers or regulate them in any way.  There is simply no legal basis for holding a third-party, like Defendants, accountable for harm caused by a state or local government's conduct.  *Cf. Janus Cap. Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 144 (2011) (finding an implied private cause of action but refusing to expand liability beyond the entities responsible for the injury).  Further, the express authorization of a private cause of action against state or local governments suggests that Congress did not intend to *also* authorize a private cause of action against a non-governmental entity.  *See Northstar*, 615 F.3d at 1115.

The court's interpretation accords with that of the FCC.  In its Statement of Interest, the FCC explains:

> Section 332(c)(7)(B)(v) could not sustain the plaintiffs'
> claims here.  That section creates a private right of action
> to challenge a local government's grant or denial of a

---

[16] And indeed, the vast majority of cases brought pursuant to this provision have been initiated by telecommunications entities alleging that state or local governments impermissibly attempted to regulate their facilities while they were in compliance with the FCC's requirements. *See, e.g.*, *Kay v. City of Rancho Palos Verdes*, 504 F.3d 803 (9th Cir. 2007); *Sprint Spectrum L.P. v. Willoth*, 176 F.3d 630 (2d Cir. 1999); *New Cingular Wireless PCS, LLC v. Cnty. of Marin Cal.*, 2021 WL 662171 (N.D. Cal. Feb. 19, 2021).  The case Plaintiffs cite to, *Santa Fe Alliance For Public Health v. City of Santa Fe*, 2020 WL 2198120 (D.N.M. May 6, 2020), does not support their argument in the slightest.  In that case, the plaintiffs did not sue under the TCA at all, nor did they sue a private telecommunications carrier.  Instead, the plaintiffs challenged the constitutionality of "federal, state, and city laws regarding the permitting and regulation of wireless telecommunications infrastructure," including 47 U.S.C. § 332(c)(7)(B)(iv)-(v).  *Id.* at *1.  Moreover, the court ultimately dismissed all of the plaintiffs' federal claims.  *Id.* at *11-12.

> request to construct or modify wireless communications facilities by filing a complaint within 30 days of such action.  47 U.S.C. § 332(c)(7)(B)(v).  *This suit does not challenge regulatory action by any local government entities, who are not among the defendants here, but instead seeks relief against a telecommunications carrier, which is not a matter covered by Section 332(c)(7)(B)(v).*

ECF No. 84-1 at PageID # 3297 (emphasis added).

Section 332(c)(7)(B)(iv)-(v) does not afford Plaintiffs a private right of action against Defendants.

## D.    Leave to Amend

Plaintiffs have failed to point to any provision of the TCA that affords them a private cause of action.  Plaintiffs' claims fail as a matter of law, and as such it would be futile to amend those claims.  The operative Complaint must be dismissed with prejudice.  *Leadsinger*, 512 F.3d at 532 (explaining that dismissal with prejudice is appropriate where amendment would be "futile").

Nevertheless, Plaintiffs assert that they are entitled to amend their Complaint to assert new claims pursuant to 47 U.S.C. § 401(b).  ECF No. 87 at PageID ## 3311-14.  Specifically, Plaintiffs assert that § 401(b) authorizes private rights of action for the same violations of FCC RF radiation and antenna height and power requirement regulations, 47 C.F.R. §§ 1.1307 and 90.205, alleged in the operative Complaint.  *Id.* at PageID # 3311.  Plaintiffs raise this argument in response to the FCC's Statement of Interest, in which the FCC notes that "[s]ome

31

courts have allowed private enforcement of certain FCC orders under Section 401(b) of the Communications Act," before going on to opine that Plaintiffs would be unlikely to successfully state a claim under that provision.  *See* ECF No. 84-1 at PageID ## 3298-99.

> Section 401(b) provides:
>
> If any person fails or neglects to obey any order of the Commission other than for the payment of money, while the same is in effect, the Commission or any party injured thereby . . . may apply to the appropriate district court of the United States for the enforcement of such order.  If, after hearing, that court determines that the order was regularly made and duly served, and that the person is in disobedience of the same, the court shall enforce obedience to such order by a writ of injunction or other proper process, mandatory or otherwise, to restrain such person or the officers, agents, or representatives of such person, from further disobedience of such order, or to enjoin upon it or them obedience to the same.

In other words, § 401(b) provides a private right of action for individuals harmed by any person's non-compliance with an FCC Order.[17]  For the purpose of § 401(b), an "order of the Commission" "encompass[es] rulemaking orders and regulations as well as adjudicative orders."  *Metrophones Telecomms., Inc. v. Global Crossing Telecomms., Inc.*, 423 F.3d 1056, 1071 (9th Cir. 2005)

---

[17] The TCA defines "person" as "an individual, partnership, association, joint-stock company, trust, or corporation."  47 U.S.C. § 153.

(citing *Hawaiian Tel. Co. v. Pub. Utils. Comm'n*, 827 F.2d 1264, 1270-72 (9th Cir. 1987)).[18]

The Ninth Circuit has held that such an "order" is enforceable under § 401(b) where it "require[s] particular actions be taken" by particular entities, but declined to decide "whether every rule, order, or regulation promulgated by the FCC is an enforceable order under § 401(b)." *Hawaiian Tel.*, 827 F.2d at 1272. Most other circuits, however, have affirmatively held that "an agency regulation should be considered an 'order' [only] if it requires a defendant to take concrete actions." *Havens v. Mobex Network Servs., LLC*, 820 F.3d 80, 87 (3d Cir. 2016) (explaining further that where a regulation "imposes no duties . . . it does not afford plaintiffs a remedy" (citing *Columbia Broad. Sys., Inc. v. United States*, 316 U.S. 407, 416-25 (1942))); *Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*, 713 F.3d 187, 200 (4th Cir. 2013) ("[N]ot all rulemaking orders are created equal for the purposes of § 401(b)'s private right of action; only those that 'require a defendant to take concrete actions' may be enforced.") (citation omitted); *accord Alltel Tenn., Inc. v. Tenn. Pub. Serv. Comm'n*, 913 F.2d 305, 308 (6th Cir. 1990) ("Because the separations order in this

---

[18] There is currently a circuit split on this issue, with "the Fourth, Fifth, Sixth, Seventh, and Ninth Circuits expressly or implicitly hold[ing] that 'order' encompasses both FCC adjudicatory and rulemaking orders," while "the First Circuit requires that an 'order' be judicial in nature." *Havens v. Mobex Network Servs., LLC*, 820 F.3d 80, 87 n.18 (3d Cir. 2016) (collecting cases).

case mandates specific action as to the division of costs to be taken by the

telephone companies and the regulatory agencies, we find that the separations

order is a reviewable and enforceable order under § 401(b).").  No court to take

this view, however, has required that orders need address *individual* entities in

order to be enforceable; instead, the test is whether the order in question "sets forth

specific rights and obligations of the litigants." *Landsdowne*, 713 F.3d at 201

(citation and quotation marks omitted).  It is likely that the Ninth Circuit would

also adopt this rule.

Here, the court assumes without deciding that 47 C.F.R. § 90.205 and

47 C.F.R. § 1.1307 are enforceable orders under § 401(b).  But even assuming

these regulations could properly be enforced through § 401(b), the court would

abstain from exercising jurisdiction over any such clams under the primary

jurisdiction doctrine.  The primary jurisdiction doctrine "is a 'prudential' one,

under which a court determines that an otherwise cognizable claim implicates

technical and policy questions that should be addressed in the first instance by the

agency with regulatory authority over the relevant industry rather than by the

judicial branch." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir.

2008).  The doctrine is appropriate to invoke if a claim presents a "'particularly

complicated issue that Congress has committed to a regulatory agency.'" *Id.*

(quoting *Brown v. MCI WorldCom Network Servs.*, 277 F.3d 1166, 1172 (9th Cir.

34

2002)).  The purpose of the doctrine is to "protect agencies possessing 'quasi-legislative powers' and that are 'actively involved in the administration of regulatory statutes.'"  *Id.* at 1115 (quoting *United States v. Gen. Dynamics Corp.*, 828 F.3d 1356, 1365 (9th Cir. 1987)).  The FCC is such an agency.  *Id.* Accordingly, courts regularly invoke the primary jurisdiction doctrine when faced with claims asserted under FCC regulations.  *See Brown*, 277 F.3d at 1172; *see also, e.g.*, *Ellis v. Trib. Television Co.*, 443 F.3d 71, 92 (2d Cir. 2006) (referring § 401(b) case to the FCC under primary jurisdiction doctrine).

Here, the primary jurisdiction doctrine would squarely apply.  The regulations at issue are highly technical, requiring application of complex formulas devised by the FCC.  For example, the antenna power and height requirements of § 90.205 require calculation of maximum effective radiated power using complicated formulas based upon service area radius and the station's antenna height above average terrain.  Likewise, human exposure to RF radiation for the purpose of § 1.1307 is determined by calculating the specific absorption rate ("SAR") and comparing that value to limits established by the FCC.  47 C.F.R. § 1.1310(a).  For "general population/uncontrolled exposure," the limits are "0.08 W/kg, as averaged over the whole body, and a peak spatial-average SAR of 1.6 W/kg, averaged over any 1 gram of tissue (defined as a tissue volume in the shape of a cube)," with exceptions for certain parts of the body.  *Id*. at § 1.1310(c).  The

regulations also set forth the acceptable techniques for measuring SAR as determined by the operating frequency and frequency range of the facility. *Id.* at § 1.310(d).

Given their highly technical nature, determination of whether defendants are out of compliance with these regulations falls within the "special competence of [the] administrative body." *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086 (9th Cir. 2006) (citation and quotation marks omitted); *see also Ellis*, 443 F.3d at 82-83 (explaining that the primary jurisdiction doctrine is proper when a case "'raises issues of fact not within the conventional experience of judges, but within the purview of an agency's responsibilities'" including "technical . . . considerations within the agency's field of expertise" (quoting *Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 673 (2003))); *Brown*, 277 F.3d at 1172-73 (same). And allowing courts to opine, in the first instance, as to whether violations of such regulations occurred would disrupt Congress' goal of uniform application of complex regulatory schemes. *See Davel Commc'ns*, 460 F.3d at 1090 ("It is precisely the purpose of the primary jurisdiction doctrine to avoid the possibility of conflicting rulings by courts and agencies concerning issues within the agency's special competence. At least unless and until the FCC declines [to provide a ruling, those issues] are within the agency's primary jurisdiction.").

36

The court's decision to defer to the agency's primary jurisdiction finds

support in the FCC's Statement of Interest, which provides:

> The regulations at issue are complex and highly
> technical, and they turn on facts that are not readily
> ascertained and that fall outside the ordinary knowledge
> of most courts and private litigants.  To be sure, the
> regulations might ultimately require certain concrete
> actions to be taken, but those actions are contingent on an
> array of technical facts and measurements that make
> these regulations anything but straightforward for courts
> to apply.

ECF No. 84-1 at PageID # 3299.[19]

In short, even if Plaintiffs were given leave to amend their Complaint

to assert claims under § 401(b), the court would dismiss those claims under the

primary jurisdiction doctrine because "the initial decisionmaking responsibility

should be performed by the relevant agency rather than the courts."  *GCB*

*Commnc'ns, Inc. v. U.S. South Commnc'ns, Inc.*, 650 F.3d 1257, 1263-64 (9th Cir.

2011) (internal citation and quotation marks omitted).  As the FCC notes in its

Statement of Interest, Plaintiffs "can always seek to alert the FCC to any potential

violations of its rules, and the agency possesses broad enforcement powers it can

---

[19] The FCC applies this reasoning to conclude that "[t]he FCC regulations invoked here are not the sort of simple, specific, and concrete directives that courts have found to be judicially enforceable under Section 401(b)."  *Id.*  But the case law does not suggest that a regulation need be "simple" for it to be enforceable under § 401(b); it need only be "specific" and mandate "concrete action."  Nevertheless, the court fully agrees with the FCC that the decision as to whether a violation of either regulation occurred falls squarely within the competency of the agency and not the court, making application of the primary jurisdiction doctrine appropriate.

employ if it ultimately determines that a violation has occurred."  ECF No. 84-1 at

PageID # 3299.  But Plaintiffs cannot state a federal claim under § 401(b) without

first pursuing that claim before the FCC.  *See Clark*, 523 F.3d at 1115 (explaining

that because "there is no formal transfer mechanism between the courts and the

agency," when a court dismisses a case under the primary jurisdiction doctrine "the

parties are responsible for initiating administrative proceedings themselves").

## V. <u>CONCLUSION</u>

For the foregoing reason, Defendants' Motion to Dismiss is

GRANTED.  Although Plaintiffs might, perhaps, be able to pursue claims through

the FCC's administrative processes or under territorial or local law in American

Samoa, they have not stated a federal claim.  The court thus lacks subject matter

jurisdiction over this action.

///

///

///

///

///

///

///

///

Because amendment would be futile, Plaintiffs' claims under 47

U.S.C. §§ 206, 207, and 332 are dismissed with prejudice.  And any 47 U.S.C.

§ 401(b) claims are dismissed without prejudice.  The Clerk of Court shall close

the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 31, 2021.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Heuter, et al. v. AST Telecomm, et al.*, Civ. No. 21-00077 JMS-KJM, Order Granting
Defendants' Motion to Dismiss, ECF No. 31